**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA INTERNAL
REVENUE SERVICE,

       Plaintiff,

   -vs-                                                No. CIV 96-0083 LH/RLP

HARRY GARCIA; CHARTER SOUTHWEST
COMMERCIAL, INC., a New Mexico
corporation; and GAECHTER OUTDOOR
ADVERTISING, INC., a New Mexico
corporation;

       Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** came before the Court for trial without a jury on August 17, 1998, on the Crossclaim of Harry Garcia (Garcia) against Gaechter Outdoor Advertising (Gaechter) for unjust enrichment. The Court, having heard the evidence presented at trial and considered the proposed and supplemental findings of fact and conclusions of law, trial briefs, and additional authorities submitted by the parties, now makes the following findings of fact and conclusions of law.

### Findings of Fact

1.   On August 1, 1986, Garcia and Gaechter entered into a three-year lease (Lease #1). Under Lease #1 Gaechter could construct a 14 foot by 48 foot billboard on certain property owned by Garcia for payment of $23,400.00 per year. The lease provided that the first and last

years' rent were to be paid in advance. Pursuant to these terms, Gaechter paid Garcia $46,800.00.

2. On September 1, 1986, the parties entered into a second three-year lease (Lease #2). Under Lease #2 Gaechter could construct a 12 foot by 24 foot billboard on the same property owned by Garcia for payment of $1,800.00 per year. The lease provided that the first and last years' rent were to be paid in advance. Pursuant to these terms, Gaechter paid Garcia $3,600.00.

3. The leases were the product of arm's length negotiations between the parties.

4. Gaechter constructed the two billboards on Garcia's property, leased them to third parties each year, and received the resulting revenues through 1995. Gaechter always rented the signs to third parties for more than the amounts it was to pay Garcia under the leases.

5. Around April 1987, Gaechter received a Notice of Levy from the Internal Revenue Service (IRS) regarding taxes owed by Garcia. The levy instructed Gaechter to make any future payments it owed Garcia to the IRS, not to Garcia.

6. Following Gaechter's receipt of the Notice of Levy, Garcia meet with Richard Zanotti (Zanotti), Gaechter's general manager, and discussed the IRS levy. Thereafter, Garcia and Gaechter both understood that future lease payments owed by Gaechter to Garcia were required by law to be paid to the IRS.

7. Garcia reasonably relied upon Gaechter to pay to the IRS the 1987 payments that were due him.

8. Although the initial term of the leases expired in 1989, Garcia and Gaechter understood that they continued unless either party terminated them by oral or written communication.

Neither Garcia nor Gaechter ever communicated to the other party such intention to terminate either lease.

9. Garcia knew that Gaechter continued to receive IRS notices of levy regarding his unpaid taxes from 1989-1995 and reasonably relied upon Gaechter to pay to the IRS the 1989 through 1995 payments that were due him.

10. The Tax Code provision with regard to surrender of property subject to levy, provides in pertinent part:

> (a) **Requirement.**—Except as otherwise provided in this section, *any person* in possession of (or *obligated with respect to*) *property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary*, surrender such property or rights (or *discharge such obligation* ) *to the Secretary*, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.
> . . .
> (e) **Effect of honoring levy.**—*Any person* in possession of (or *obligated with respect to*) *property subject to levy upon which a levy has been made who, upon demand by the Secretary*, surrenders such property or rights to property (or *discharges such obligation*) *to the Secretary* (or who pays a liability under subsection (d)(1)) *shall be discharged from any obligation or liability to the delinquent taxpayer* and any other person *with respect to such property or rights to property arising from such* surrender or *payment*.

26 U.S.C. §6332 (emphasis added).

11. The Notice of Levy, revised in August 1994, issued to Gaechter by the IRS on April 13, 1995, stated:

> *This levy requires you to turn over to us the person's property and rights to property* (such as money, credits, and bank deposits) that you have or *which you are already obligated to pay this person*. . . .

3

> *. . . Turn over any other money*, property, credit, etc. *that you* have or *are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment.*
> *Make a reasonable effort to identify all property and rights to property belonging to this person.* At a minimum, search your records using the tax name, address, and identifying numbers(s) [sic] shown on this form. . . .
> *To respond to this levy*:
> 1. *Make your check or money order payable to Internal Revenue Service.*

(Gaechter's Ex. B (emphasis added).)

12. IRS notices of levy used in 1992, revised in July 1989, included the following language:

> *. . . All property, rights to property, money*, credits, and bank deposits now in your possession and belonging to this taxpayer (or *for which you are obligated*) *and* all money or *other obligations you owe this taxpayer, are levied upon for payment of the tax*, plus all additions provided by law. *Demand is made on you either to pay this tax liability or pay any smaller amount that you owe this taxpayer.*
> *. . .[Y]ou must turn over the taxpayer's property, money, credits, etc. just as though the taxpayer had demanded it.*
> *Please make your check or money order payable to the Internal Revenue Service. . . .*

(Gaechter's Ex. H (emphasis added).)

13. Gaechter made no further payments to Garcia for its use of his property.

14. Gaechter willfully decided to make no payments for the use of Garcia's property to the IRS, made no such payments, and consciously concealed this fact from Garcia while continuing to use his property.

15. Garcia lacked knowledge until sometime after March 31, 1995, that Gaechter had not remitted its obligations owed him to the IRS.

16. On April 24, 1995, the IRS seized Garcia's property that was the subject of the leases with Gaechter.

17. On June 7, 1995, the IRS sold the property at a tax sale. Gaechter purchased the property at that sale.

18. Garcia subsequently attempted to redeem the property.

19. On January 19, 1996, the IRS filed this interpleader action. (Compl. (Docket No. 1).)

20. On August 18, 1998, this Court ordered that Gaechter was entitled to the deed to the property. (Partial Summ. J. Regarding Interpleader Action (Docket No. 66).)

21. The amounts of $23,400.00 and $1,800.00 represent the yearly fair market value of Lease #1 and Lease #2, respectively.

22. Gaechter no longer conducts business in New Mexico.

23. Donrey, Inc., a competitor of Gaechter's from the mid-1980's to the mid-1990's, currently leases the property from Gaechter.

24. At the time of trial, Zanotti was a consultant for Donrey, Inc.

## Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter.

2. Due to Gaechter's misrepresentations, misconduct, and concealment of material facts, Garcia's claim is not barred by the statute of limitations, waiver, estoppel, laches, or any other affirmative defenses.

3. Due to Gaechter's continued use of the property for signs after the fall of 1989, it is estopped from denying the renewal of the leases by understanding of the parties.

4. The Notices of Levy received by Gaechter in 1987 through 1995, constituted a demand by the Secretary on Gaechter to pay to the IRS the lease payments it owed Garcia, pursuant to 26 U.S.C. § 6332(a). (Gaechter's Exs. B, H.) *See also United States v. National Bank of Commerce*, 472 U.S. 713, 716 (1985)(in 1980, "a notice of levy was served . . . *demanding* that the bank pay over to the United States all sums the bank owed [to delinquent taxpayer]")(emphasis added).

5. In failing to comply with the IRS Notices of Levy, Gaechter remained liable to Garcia for its obligations under the leases through December 4, 1995. *See* 26 U.S.C. §§ 6332(e), 6339(b); *Babbs v. Frank*, 947 F. Supp. 405 (W.D. Wis. 1996).

6. Gaechter was unjustly enriched, at the expense of Garcia, by its failure to comply with the IRS Notices of Levy.

7. Gaechter is liable to Garcia for $23,400.00 as to Lease #1 and $1,800.00 as to Lease #2 for each year it made use of Garcia's property and failed to reimburse Garcia or the IRS. Use for part of a year is to be prorated.

8. There being no countervailing equities, Garcia is entitled to interest at the rate of 15%, per annum, compounded annually, from the date each unpaid lease payment was due, until paid. N.M. Stat. Ann. §§ 56-8-3(B), 56-8-4(A).

_____
**UNITED STATES DISTRICT JUDGE**